MIRIAM K. KAHN, Respondent, v TRUSTEES OF COLUMBIA UNIVERSITY, Respondent, and ALFRED J. KAHN, Intervenor-Appellant.

First Department, July 11, 1985

APPEARANCES OF COUNSEL

*Jeffrey Newman* of counsel (*Dolgenos, Bergen & Newman,* attorneys), for Miriam K. Kahn, respondent.

*Richard Lee Wallace* for intervenor-appellant.

### OPINION OF THE COURT

ASCH, J.

This is an appeal by the husband, intervenor-appellant Alfred Kahn, from that portion of an order which directed Columbia University, respondent in the turnover proceeding commenced by petitioner-respondent Miriam Kahn, to pay to intervenor only those amounts withheld pursuant to an income execution that exceeded, if at all, 50% of intervenor's weekly disposable earnings during the subject period, namely, from October 1982 to date.

The husband and wife had been married for 36 years and have been living separate and apart since August 1973. The wife is 64 years of age, and aside from $500 per week she receives from the husband as support, fixed by Supreme Court, Westchester County, in 1975, has no income.

The husband, 66, is a senior professor of social policy at the university's School of Social Work, where he is the director of cross-national studies of social service systems. He is also the administrator/director of long-range research projects and a consultant for the Federal Government, private foundations and agencies.

In October 1974, the husband sued the wife for divorce in Supreme Court, Westchester County. After trial on the merits, the court denied his request for a divorce and found for the wife on her counterclaims, directing that the husband pay her the sum of $22,058.89, representing her share of joint bank accounts that the husband had improperly closed out and converted to his personal use. In addition, the court directed the husband to pay the wife the sum of $30,188 for support and costs incurred by the wife in the period before trial and also directed the husband to pay $500 per week for support and maintenance commencing December 1, 1975. These determinations were contained in a judgment dated January 16, 1976, which judgment was modified by the Appellate Division, Second Department, reducing the prior support and necessity component of the award from $30,188 to $15,000 (*Kahn v Kahn,* 55 AD2d 638). The judgment, as modified, was affirmed by the Court of Appeals (*Kahn v Kahn,* 43 NY2d 203). The 1976 judgment awarding the wife $22,058.89 for her share of the bank accounts provided that the

husband pay $12,058.89 within 10 days of service of a notice of entry and the $10,000 balance at the rate of $1,000 per month for 10 months. More than $25,000, including interest and costs, remain owing to the wife.

In October 1977, to enforce the judgment, the wife issued to the Sheriff of the City of New York an income execution pursuant to CPLR 5231. The Sheriff served the income execution on the husband, directing that he pay to the Sheriff 10% of his earnings from the university until such time as the judgment is satisfied. In March 1980, following the husband's default thereon, the Sheriff served the income execution upon the husband's employer, the university. Thereafter, until September 1982, the university paid to the wife 10% of the husband's earnings withheld pursuant to the income execution.

On August 23, 1982, following the husband's default in payment of support to the wife, the Westchester Family Court issued an income deduction order pursuant to Personal Property Law § 49-b, which directed the university to deduct $500 per week from the husband's earnings and to pay that sum to the Westchester Support Collection Unit for transmittal to the wife.

The university has honored the $500 per week income deduction order since receiving the order. However, in September 1982, the university unilaterally determined not to pay the wife pursuant to the 10% income execution previously served on it. Except for the month of September 1982, the university has continued to withhold such sums but determined to deliver moneys retained under the income execution only in accordance with a judicial determination. Pursuant to an affirmation filed by the university attorney during this proceeding, the university had withheld but not paid out more than $14,000 in the 24-month period from October 31, 1982 to October 30, 1984. If the university continued to withhold at the same rate, there is now over $18,000 being held by the university. Both the husband and wife claim said money.

The wife commenced this proceeding seeking to compel the university to turn over the sums withheld under the income execution. By notice of cross motion, the husband sought to intervene and oppose the application, asking that the university be directed to pay to him the sum withheld under the income execution. The husband argued that pursuant to the Consumer Credit Protection Act (15 USC § 1671 *et seq.*), the university was barred from honoring the income execution as garnishments in excess of 25% of disposable earnings are barred except for garnishments for support, which are permitted up to 50 to 65% of

disposable earnings, depending on specific family circumstances. The wife claimed that the Federal statute is not applicable to the facts at bar.

In its decision, Special Term found that the Consumer Credit Protection Act applied but rejected the argument that the university's honoring of the income deduction order (support) precluded the wife's enforcement of her income execution to the extent that the income deduction absorbed the 25% limitation applicable to nonsupport garnishments. Special Term held that if the income deduction order and income execution together exceeded the limit for support garnishment, then the garnishment would be in violation of the Federal law and unenforceable. In its order entered August 17, 1983, Special Term directed the university to pay to the husband all amounts which exceed 50% of his disposable earnings during the subject period. Since the money withheld by the university did not approach 50% of the husband's disposable earnings, the wife believed that Special Term would direct the university to pay to her the sum that it had withheld, but the order contained no such directive and, in fact, denied the wife's turnover motion.

■ On the facts before this court, the Consumer Credit Protection Act does not bar the wife's enforcement of her income execution against the husband. The husband urges the applicability of the Federal Consumer Credit Protection Act (15 USC § 1601 *et seq*.). He predicates his position on the relationship between two provisions thereof, viz., 15 USC § 1673 (a) (1) and 15 USC § 1673 (b). 15 USC § 1673 provides in pertinent part:

"(a) Except as provided in subsection (b) of this section * * * the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

"(1) 25 per centum of his disposable earnings for that week".

The relevant portion of 15 USC 1673 (b) (1) carves out from the restriction set out above a garnishment to enforce "any order for the support of any person". As to such a garnishment, 15 USC § 1673 (b) (2) sets forth the applicable limitations: — 50% of such individual's disposable earnings where that individual is supporting another spouse or dependent, the so-called "second family" rule (55% where the individual is more than 12 weeks in arrears), and — 60% where there is no second family being supported (65% where the individual is more than 12 weeks in arrears).

Construing these two sections, the husband argues that if the income deduction order for support "absorbs" (uses up) the 25% limitation otherwise applicable to covered, nonsupport garnishments, then petitioner may not properly enforce her income execution. He maintains this position even where, as here, the two orders together do not reach the limitation applicable to support garnishments alone, namely, 65% of intervenor's disposable earnings. Sixty-five per cent is the applicable limitation under 15 USC § 1673 (b) (2) (B) as a result of the fact that intervenor is not supporting a second family and the substantial length of time that intervenor was in arrears before issuance of the income deduction order.

In addition, the Consumer Credit Protection Act is inapplicable to petitioner's efforts to enforce her income execution. "Congress had certain types of creditors in mind in enacting this legislation [the Consumer Credit Protection Act]" (*Matter of Carol J. v William J.,* 119 Misc 2d 739, 743) — namely, those unscrupulous lenders and merchants guilty of making "predatory extensions of credit" (15 USC § 1671 [a] [1]; *see also,* House Report No. 1040, 1968 US Code Cong & Admin News, at 1962, 1966 ["House Report"]). Congress' imposition of restrictions on garnishments that could be utilized by such creditors — restrictions set out in 15 USC §§ 1671-1677, which is Consumer Credit Protection Act title III — was part of a larger effort to protect unwary consumers from the likes of such lenders and merchants: by requiring full disclosure of the terms and conditions of finance charges in credit transactions (truth-in-lending) (15 USC §§ 1601-1667e, which is Consumer Credit Protection Act tit I); later, by prohibiting improper discrimination in the granting of consumer credit (equal credit opportunity) (15 USC §§ 1691-1691f, which is Consumer Credit Protection Act tit VII).

Patently, a dependent wife in the position of petitioner herein, who seeks merely to enforce a matrimonial judgment decreeing return of funds improperly taken from her by her husband, cannot fairly be said to fall within the ambit of the garnishment restrictions imposed by the Act on certain creditors.

Significantly, we are directed by the United States Supreme Court to embark on precisely such an analysis as set forth above. "The Congress did not enact the Consumer Credit Protection Act in a vacuum" (*Kokoszka v Belford,* 417 US 642, 650). For that reason, a court faced with the task of construing that Act " 'will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and

policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature'" (*supra,* at p 650).

In appropriate cases and on the strength of such analysis, other courts have not hesitated to declare inapplicable the garnishment restrictions contained in the Consumer Credit Protection Act, notwithstanding the seemingly broad sweep of the statutory language invoked by intervenor. (*See, e.g., Carter v State ex rel. Bullock County,* 393 So 2d 1368, 1371 [Ala 1981] [Consumer Credit Protection Act inapplicable to the recovery of a fine imposed in contempt proceeding]; *see also, Kornit v Board of Educ.,* 534 F Supp 94, 95, *affd* 677 F2d 13 [Consumer Credit Protection Act inapplicable to recovery of Taylor Law penalties imposed after illegal strike].)

Significantly, all three of the cases cited by intervenor (*General Motors Acceptance Corp. v Metropolitan Opera Assn.,* 98 Misc 2d 307; *Matter of Liedka v Liedka,* 101 Misc 2d 305; *Long Is. Trust Co. v United States Postal Serv.,* 647 F2d 336) are distinguishable on their face from the case at bar. In each of these cases, the party seeking to enforce its income execution (as against a competing support order won by a dependent spouse) was a separate, commercial creditor that had earlier extended credit in a clearly commercial setting.

Even if the Consumer Credit Protection Act were somehow deemed applicable herein, intervenor's central argument, i.e., that once petitioner's income deduction order exceeds ("absorbs") the 25% limitation fixed for nonsupport garnishments, petitioner may not enforce her income execution — and this even though both processes reach far less than the 65% limitation permitted for support orders, must be rejected. As applied to the facts at bar, such an argument, which is nowhere mandated by the express language of the statute, defies both common sense and a fair interpretation of the underlying statutory purposes to be served.

■ For one thing, petitioner's efforts to enforce her judgment — awarded her by a matrimonial court and concededly grounded in intervenor's conversion of her share of joint bank accounts — is an effort "to enforce any order for the support of any person" within the meaning of 15 USC § 1673 (b) (2); as such, petitioner may properly enforce her income execution, along with her income deduction order, up to the applicable limit set out in 15 USC § 1673 (b) (2), viz., up to 65% of intervenor's disposable earnings.

That petitioner's income execution does indeed seek to enforce an "order for the support of any person" is underscored by the court's decision in *Cashin v Cashin* (186 NJ Super 183, 451 A2d 1331). In that case, the court concluded that counsel fees earlier awarded to the wife's attorney constituted an order for "support" within 15 USC § 1673 (b) (2) — and hence could be enforced up to the 50 to 65% level fixed in that section. In so holding, the court ruled broadly that for this purpose, "support" is "a payment of money from the obligor spouse to the obligee spouse" (186 NJ Super, at p 187, 451 A2d, at p 1332). The court also declared that the statute "attempt[s] to preserve support monies due and owing a supported spouse", noting that the "manner of payment" did not necessarily circumscribe the definition of support (*supra,* at p 187, p 1332).

New York's definition of "support" is likewise broad, embracing, in addition to the traditional litany of food, shelter and clothing, "other proper and reasonable" items (Family Ct Act § 416). This section has been acknowledged as conferring "wide latitude for judicial discretion" (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 416, p 122 [1983 ed]).

Thus, the matrimonial court that ordered intervenor to return property to the wife issued an "order for the support of any person" within the meaning of 15 USC § 1673 (b) (2).

The result herein also furthers the fundamental object of the Consumer Credit Protection Act, which is to "preserve [debtors'] employment and insure a continued means of support for themselves and their families" (House Report, *op. cit.,* at 1979). Such a fundamental policy — that wage earners be required to support their dependents — is deeply embedded in the fabric of both Federal and State law. Apart from the Consumer Credit Protection Act itself, Federal law mandates that the States establish a mechanism to collect payment from persons liable for the support of dependents (42 USC § 652 [b]), empowers the Treasury Secretary to grant a tax lien if necessary to secure the support of dependents (26 USC § 6305), and makes Federal employees subject to support proceedings (42 USC § 659). Under State law, of course, a married person has a duty to support his spouse (Family Ct Act § 412), from which duty he may not be contractually relieved (General Obligations Law § 5-311).

On this record, to permit intervenor to invoke the Consumer Credit Protection Act to evade a judgment decreeing return of his wife's funds would actually encourage abandoning spouses to withhold support payments on the theory that the resultant

income deduction order would likely exceed the 25% limit available to covered, nonsupport garnishments — and thereby insulate earnings otherwise available to satisfy fundamental obligations, e.g., compliance with a judgment mandating return of converted funds to the abandoned spouse. " '[T]he garnishment exemption provisions should serve as a shield for the wage earner and his or her dependents, not as a sword to be used by the wage earner against those dependents' " (*Liedka v Liedka, supra,* at p 312).

Accordingly, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered on August 17, 1983, which, *inter alia,* directed respondent Columbia University to pay to the intervenor husband all amounts withheld pursuant to an income execution from October 1982 to date that exceed 50% of his weekly disposable earnings during the subject period, should be modified, on the law and the facts, to direct turnover of the withheld sums to the petitioner wife to be credited against her outstanding judgment against intervenor, and otherwise affirmed, without costs or disbursements.

SANDLER, J. P., CARRO, LYNCH and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on August 17, 1983, unanimously modified, on the law and the facts, to direct turnover of the withheld sums to the petitioner-respondent to be credited against her outstanding judgment against intervenor, and otherwise affirmed, without costs and without disbursements.