DENISE A. LENIGAN, Respondent, v JAMES W. LENIGAN, Appellant.

Third Department, July 19, 1990

### APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning (Peter L. Rupert* of counsel), for appellant.

*McCarthy & Evanick (Ihor B. Evanick* of counsel), for respondent.

### OPINION OF THE COURT

YESAWICH, JR., J.

In 1987, after 7½ years of marriage, plaintiff and defendant separated. The parties have one child, Kelly, who is currently age eight. After the separation, plaintiff applied to Family Court and was granted a temporary order of support which required defendant to pay her $100 per week and to continue making the mortgage payments on the marital residence as well as the electric and phone expenses.

Defendant apparently complied with this order except for a brief period when the parties were temporarily reconciled. Then, to defray arrearages claimed by plaintiff, defendant voluntarily increased his monthly support payments. Plaintiff never obtained a final order of support; Family Court eventually marked her petition dismissed after both parties repeatedly failed to appear, although there is no evidence that a formal order of dismissal was ever entered.

Thereafter, plaintiff initiated this divorce action in Supreme Court and requested various pendente lite relief. Applying the recently enacted Child Support Standards Act (Domestic Rela-

tions Law § 240 [1-b]), Supreme Court issued an order directing defendant to pay plaintiff the following amounts weekly: (1) $523 for child support, (2) $29 for child care, (3) $9.50 for uninsured medical expenses, and (4) $73 for the child's special education needs occasioned by a hearing impairment. The court apparently determined that defendant's share of the child's special education expenses, like the child care and medical expenses, should also be prorated in the same proportion as each parent's income bears to the combined parental income (see, Domestic Relations Law § 240 [1-b] [c] [7]; Reichler and Lefcourt, *The New Child Support Standards Act,* 62 NY St BJ 36, 41 [Feb. 1990]). In all, defendant's weekly child support obligation totaled $634.50. In addition to this amount, and other awards not challenged on this appeal, Supreme Court enjoined defendant to continue paying the mortgage in the amount of $751 per month, and to contribute $100 a week in spousal maintenance. On appeal, defendant maintains that because plaintiff failed to demonstrate changed circumstances, Family Court's support order was improperly modified and further that Supreme Court erroneously interpreted and misapplied the statutory child support guidelines.

■ Contrary to defendant's suggestion, Supreme Court did not modify an existing temporary order of support. Plaintiff effectively abandoned the original action and, consequently the temporary order terminated (see, Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236A:7, at 164, citing *Senf v Senf,* 39 Misc 2d 1061). And since plaintiff did not seek to modify a support provision contained in either a separation agreement or a judgment of divorce, she was not obliged to show a change in circumstances (cf., *Matter of Brescia v Fitts,* 56 NY2d 132, 140-141; *Matter of Boden v Boden,* 42 NY2d 210, 213).

■ There is force, however, in defendant's argument that the child support standards of Domestic Relations Law § 240 (1-b) were incorrectly applied. The parties do not dispute that defendant's 1988 income, as reflected in their joint Federal income tax return, was $159,535.54, and that plaintiff's 1988 income was $10,692.46. Thus, the parties' gross income was $170,228 (see, Domestic Relations Law § 240 [1-b] [b] [4], [5] [i]). Supreme Court then deducted $31,740 for unreimbursed employee business expenses and $3,379.50 for Social Security

contributions,* both of which were attributable to defendant's income, from the parties' gross income rather than from defendant's income alone (see, Domestic Relations Law § 240 [1-b] [b] [5] [vii] [A], [H]). Had these items been correctly deducted, defendant's adjusted income would be $124,416.04, while the parties combined parental income would be $135,108.50.

Because Supreme Court's *temporary* order requires defendant to pay plaintiff maintenance but does not provide "for a specific adjustment * * * in the amount of child support payable upon the termination of * * * maintenance" (Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C]), the statute does not allow defendant to deduct his $100 per week maintenance obligation in arriving at the amount of his income available for child support (see, 4 Foster-Freed-Brandes, Law and the Family New York § 2:11 [1990 Cum Supp], at 58). Were this a permanent order, however, the maintenance award should include a provision authorizing an application to the court for an adjustment or modification of the child support amount if at any time the maintenance payments should terminate (see, 4 Foster-Freed-Brandes, *op. cit.;* Reichler and Lefcourt, *New Legislation: The Child-Support Standards Act,* NYLJ, June 30, 1989, at 28, cols 3-4); maintenance made pursuant to such an order would be deductible from the payor's income.

Using the corrected figures, the parties' total annual child support obligation is $22,968.45, computed by multiplying the combined parental income of $135,108.50 by 17% (the appropriate child support percentage for one child) (see, Domestic Relations Law § 240 [1-b] [b] [3] [i]). To determine the amount defendant must contribute annually to the child's upkeep ($21,130.97), the total child support amount ($22,968.45) is prorated in the same proportion as his income bears to the combined parental income ($124,416.04/$135,108.50 = 92%) (see, Domestic Relations Law § 240 [1-b] [c] [2]). Translated into weekly payments, defendant is obligated to contribute $406.36 toward his child's support.

Employing this same child support percentage (92%) to plaintiff's additional expenses (see, Domestic Relations Law § 240 [1-b] [c] [4], [5], [7]), including child care costs of $31 per week, uninsured health care expenses of the child of $10.38 per week and the child's special education needs of $78 per

---

* There is no evidence in the record of any Social Security contributions having been made by plaintiff.

week, defendant must additionally contribute $109.83 ($28.52 + $9.55 + $71.76). Accordingly, defendant's total basic weekly child support obligation under the guidelines should be $516.19 ($406.36 + $109.83).

■ Finally, we find merit to defendant's contention that because the Legislature intended that the child support percentage include an allowance for sheltering the child, it was error to order defendant to pay the mortgage in addition to child support and maintenance. Shelter costs, like food and clothing, inhere in the basic child support obligation. Thus, the statute does not contemplate the cost of providing the child's shelter as an extraordinary expense to be added to the support obligation, such as child care, health care or special education expenses (see, Domestic Relations Law § 240 [1-b] [c] [4], [5], [6], [7]; Haynes, Bell, Landstreet and Sablan, Child Support Reference Manual, ch VI, at 19-22 [Dec. 1989] [Off of Child Support Enforcement, US Dept of Health and Human Servs]). The court unquestionably has authority to fix the amount of spousal maintenance (see, Domestic Relations Law § 236 [B] [6]) and to determine the noncustodial parent's share of the child's support (see, Domestic Relations Law § 240 [1-b]). Requiring defendant to pay the mortgage in addition to meeting his child support obligation, however, was improper for the function of the mortgage payment is, in part, to ensure shelter is provided for the child. Because, as already noted, shelter is inherent in the basic child support obligation, it follows that implicit in Supreme Court's order directing defendant to pay the mortgage is a finding that the child support payment, calculated in accordance with the statutory guidelines, was "unjust" or "inappropriate" (Domestic Relations Law § 240 [1-b] [g]; see, Tippins, Child Support Standards Act [NY], Special Release, at 1 [Sept. 1989]). That being the case, Supreme Court was required to identify in its written order the factors (see generally, Domestic Relations Law § 240 [1-b] [f]) that induced it to vary from the statutory amount and to articulate the reasons for the child support actually awarded (Domestic Relations Law § 240 [1-b] [g]). As this has not been done, the matter must be remitted to permit Supreme Court to comply with these statutory directives.

MAHONEY, P. J., KANE, LEVINE and MERCURE, JJ., concur.

Order reversed, on the law and the facts, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision.