[629 NYS2d 281]

# In the Matter of MARIA SFERRAZZA, Respondent-Appellant, v BERGDORF GOODMAN, INC., Appellant-Respondent.

Second Department, July 10, 1995

*Lunney, Crocco, DeMaio & Camardella, P. C. (Andrew P. Saulitis* of counsel), for appellant-respondent.

*Alter & Alter (Stephanie S. Alter* of counsel), for respondent-appellant.

## OPINION OF THE COURT

FLORIO, J.

On this appeal and cross appeal we are called upon to determine whether a provision in a pendente lite order entered in a matrimonial action, which directed the husband to pay the wife a specified sum for the mortgage and carrying charges on the marital residence, is enforceable against an income payor by way of an income execution pursuant to CPLR 5241.

Maria Sferrazza, the petitioner herein (hereinafter the petitioner), commenced a divorce action in 1990. Thereafter, by order dated November 9, 1990, she obtained pendente lite relief in that action which directed her husband, Fernando Sferrazza (hereinafter the husband), to pay her $350 per week in maintenance and child support as well as $2,500 per month ($577.37 per week) towards the mortgage and carrying charges on the marital residence. In or about January 1991 the petitioner's counsel served Bergdorf Goodman, Inc. (hereinafter Bergdorf) with an income execution pursuant to CPLR 5241 directing it to deduct the sum of $927.37 ($350 plus $577.37) per week from advances it paid to the husband and to transmit the money to her. Bergdorf commenced payment on the income execution and continued such payments through the end of November 1991. Thereafter, a dispute arose as to the proper amount of the payment and Bergdorf stopped the payments as of December 1, 1991. No more payments have been received under the income execution, except for a sum

which was collected by the Sheriff of the City of New York. The petitioner commenced this proceeding against Bergdorf seeking to compel it to turn over the amounts she alleged had been deducted and held by Bergdorf pursuant to the income execution. In its answer Bergdorf contended, *inter alia,* that it was not an "income payor" under the relevant statute and thus had no obligation to make any deductions, and that the income execution was invalid to the extent it sought to enforce nonsupport obligations (i.e., payments for the mortgage and carrying charges on the marital residence).

By memorandum decision dated August 10, 1992, the Supreme Court held that Bergdorf was an "income payor". However, it also held that under CPLR 5241 (a), the reach of the income execution is limited to those amounts specifically designated in the order being enforced as maintenance and/or support. It therefore granted the petition, but only to the extent that the petitioner sought payment of the $350 per week specifically designated in the pendente lite order as maintenance and/or support. The court denied the petition to the extent it sought payment of sums which were designated for mortgage and utility payments. Judgment was then entered awarding the petitioner the sum of $350 per week from December 1, 1991 through December 17, 1992, the date of the judgment, for a total of $19,950. Bergdorf subsequently moved, in effect, for reargument to limit the period covered by the judgment to December 1, 1991 through August 29, 1992, on the ground that as of August 30, 1992, Bergdorf was no longer an income payor since the licensing agreement between it and the husband was terminated as of August 29, 1992. The court denied the motion.

On appeal Bergdorf, *inter alia,* raises the issues of whether the period covered by the judgment and interest thereon should have been limited to the period between December 1, 1991 and August 29, 1992, and whether the interest was correctly calculated. The petitioner cross-appeals on the ground that the Supreme Court erred by limiting the sum collectible under the income execution to the $350 per week specifically designated in the underlying pendente lite order as maintenance and/or support.

We find that the Supreme Court's conclusions limiting the money recoverable under the income execution is too narrow an interpretation of the applicable statute and hold that the petitioner should be able to recover the entire sum set out in the income execution. We further find that there is a factual

question as to the period during which Bergdorf was an "income payor" which cannot be determined without a hearing. We therefore reverse the judgment, and remit this matter to the Supreme Court, Queens County, for a hearing and the entry of an amended judgment in accordance with this opinion and order.

CPLR 5241 (b) (1) provides that an income execution to aid in enforcement of a support order may be issued whenever a debtor is in default. It mandates that "[t]he amount of the deductions to be withheld shall be sufficient to ensure compliance with *the direction in the order of support,* and shall include an additional amount to be applied to the reduction of arrears" (CPLR 5241 [b] [1] [emphasis added]). Applying two of the rules of statutory construction: the first, that every word in a statute is to be given effect; and the second, that the expression of one thing excludes others (McKinney's Cons Laws of NY, Book 1, Statutes §§ 231, 240), we find that the Legislature intended to make all "directions" for the payment of a sum of money contained in an order of support enforceable by way of an income execution.

Clearly, had the Legislature wished to limit the scope of the income execution to the amounts specifically designated for maintenance and/or child support, it could have done so. Instead, it chose to use the much broader phrase of "direction in the order of support" (CPLR 5241 [b] [1]). By doing so, the Legislature clearly signaled its intent that the money subject to recovery by way of an income execution under CPLR 5241 includes periodic payments, such as those relating to shelter, and not only amounts specifically designated as maintenance and/or support.

The case for a more expansive reading of the term "support", so as to permit it to include a sum of money earmarked for shelter needs, is bolstered by the prior case law interpreting the obligation of a noncustodial parent under Domestic Relations Law § 240, the Child Support Standards Act (hereinafter the CSSA). While we have not adopted a definitive definition as to what constitutes "support", we, along with the Appellate Divisions, First and Third Departments, have held that a child's support allowance includes a component for shelter.

In our leading cases on the child support obligation of a noncustodial parent, *Krantz v Krantz* (175 AD2d 863) and *Krantz v Krantz* (175 AD2d 865), we have held that an award

for child support under the CSSA also includes a component to provide shelter for the children. Thus, in those instances where we have directed payment of a separate specified sum towards the parent's obligation to provide shelter for the child, we have also found it necessary to reduce the provision for child support to account for that sum. Clearly therefore, any moneys normally allocated for support must necessarily include some funds properly earmarked for shelter. Similarly, in *Lenigan v Lenigan* (159 AD2d 108), the Appellate Division, Third Department, found that the Legislature had indicated that the amount of support calculated under the CSSA also included a component to provide for the children's shelter needs *(see also, James v James,* 169 AD2d 441). We note that "support" is a term which is to be construed liberally *(see, Kahn v Trustees of Columbia Univ.,* 109 AD2d 395).

Therefore, any separate allocation for shelter contained in a pendente lite order of support should properly be considered a support obligation, as are amounts specifically denominated as maintenance and/or child support, at least for the purposes of CPLR 5241. Thus, it was error for the Supreme Court to have differentiated between the amounts specifically allocated to maintenance and child support in the November 9, 1990 pendente lite order and the amount allocated by that same order for shelter in determining the the sum to be awarded in the judgment.

However, the record reveals that there is a factual question as to whether Bergdorf ought to be considered an "income payor" for the entire period covered by the judgment, i.e., December 1, 1991 through December 17, 1992, or whether the relationship between Bergdorf and the husband was severed as of August 29, 1992. It was therefore error to have entered judgment covering the period August 29, 1992 through December 17, 1992 prior to holding a hearing to determine whether Bergdorf was an "income payor" during that period.

The appeal from the order dated February 18, 1993 must be dismissed, without costs or disbursements, as no appeal lies from an order denying reargument. The judgment must be reversed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter remitted to the Supreme Court, Queens County, for a hearing in accordance herewith and entry of appropriate amended judgment directing that the petitioner recover a sum to be calculated by multiplying $927.37 (the amount set forth in the income execution) by the number of weeks that Bergdorf was an

"income payor" during the period December 1, 1991 through December 17, 1992, together with appropriate interest at the legal rate through the date of entry.

In light of this determination we need not reach Bergdorf's remaining contentions.

SULLIVAN, J. P., ROSENBLATT and BALLETTA, JJ., concur.

Ordered that the appeal from the order dated February 18, 1993 is dismissed, without costs or disbursements, as no appeal lies from an order denying reargument; and it is further,

Ordered that the judgment dated December 17, 1992 is reversed, insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted for further proceedings in accordance herewith, and for entry of an appropriate judgment directing that the petitioner recover a sum to be calculated by multiplying $927.37 (the amount set forth in the income execution) by the number of weeks that Bergdorf was an "income payor" during the period December 1, 1991 through December 17, 1992, together with appropriate interest at the legal rate through the date of entry.