(June 11, 2009)

■ ISABELLA AYOUB, Respondent, v JOSEPH AYOUB, Appellant. [881 NYS2d 66]—

Order, Supreme Court, New York County (Saralee Evans, J.), entered October 2, 2008, which, to the extent appealed from, granted plaintiff's motion for pendente lite relief in the form of monthly payments of $20,000 to maintain an apartment for plaintiff and the children, $7,000 in temporary child support, and $2,500 in temporary maintenance, as well as the cost of the children's private school tuition, child care and nursery school expenses, after-school and extracurricular activities, books, supplies, camp and travel expenses, the children's medical, therapy, dental and pharmacological costs, and the family medical insurance premiums, modified, on the facts, defendant ordered to pay the actual monthly cost of the apartment in which plaintiff and the children presently reside in lieu of $20,000 per month to maintain an apartment, and otherwise affirmed, without costs.

Plaintiff wife and defendant husband were married in 1997. Together they had three children, who are 10, 7 and 3. The husband is the sole owner of a commercial bakery that employs approximately 125 people and generates annual revenues in excess of $22 million. The wife has an undergraduate degree in architecture and owned a design business prior to the marriage. However, she did not work outside the home during the marriage and has no income of her own. She claims that the husband kept her in the dark about the parties' finances and that for spending money she relied on weekly cash allowances that he gave her.

During the marriage, the family enjoyed what can only be described as an extravagant lifestyle. They resided in a six-story townhouse on East 70th Street in Manhattan, which they purchased for $6 million and then gut-renovated. They owned a vacation home in the Hamptons, situated on three acres of land, that was designed by a renowned architect. All of the furnishings and appliances in the homes were state of the art. For example, the mattress in the master bedroom in the townhouse cost approximately $50,000 and the speakers in the "audio/visual" room there cost approximately $150,000. Defendant's car collection is valued in excess of $1 million. The family's vacations were also extraordinary. They visited Paris each fall, and in the winter skied the slopes of Aspen, Vail, Beaver Creek and Bachelor Gulch. When they vacationed in Tuscany in the summer of 2005, they rented their own villa.

The parties also spared no expense when it came to their children. Each child's mattress cost approximately $6,500. When

their oldest child wanted to learn how to play guitar, he received a $3,000 instrument. The children's annual birthday parties cost approximately $2,000 and their private school tuition is $30,000 per year each.

Shortly after she commenced this divorce action, the wife moved by order to show cause for pendente lite relief, including custody of the children, monthly maintenance, and monthly child support. The wife also sought to have defendant pay all carrying charges on the townhouse, medical insurance premiums for her and the children and private school tuition. In support of her motion the wife submitted her statement of net worth, in which she asserted that her monthly expenses were $52,658.80. These included, among other things, $7,166.66 for food, $4,583.33 for clothing, $3,000 for babysitting, $7,270.82 for education, $9,813.66 for recreation and $2,054.33 for miscellaneous items.

The wife also claimed in the statement of net worth that her monthly housing cost was $15,000. This was the amount she anticipated she would have to spend to rent an apartment in Manhattan. The need for her to rent was made necessary by the fact that, as of the time the wife made the motion, the husband had entered into a contract to sell the townhouse. He had also signed an agreement to purchase a mansion in Scarsdale, New York. The wife claims that she adamantly rejected the husband's proposal that they sell the townhouse and that she had no desire to move the children out of the city.

The husband cross-moved for temporary custody of the children and the appointment of a law guardian for the children. In opposing the wife's motion, the husband asserted that the expenses claimed by the wife in her statement of net worth were "grossly exaggerated." For example, he stated that the parties never spent the specific amounts claimed by the wife for food and clothing. According to his own statement of net worth, those items cost $1,720 and $2,416, respectively. The husband further maintained that the wife was entitled only to maintenance in the amount delineated in a prenuptial agreement between the parties.

The husband contended that the wife agreed to the concept of leaving the city. However, he conceded that he agreed to purchase the Scarsdale home unilaterally, after what he described as the wife changing her mind and refusing to cooperate in the search for a suitable home in Westchester County. The husband claimed that his desire to move to Scarsdale was motivated by the nearby presence of a particular private school well-suited to the special needs of one of the children, as well as

the availability of good public schools for the other children. He also cited the declining real estate market in Manhattan and the rising cost of the children's private school tuition.

The husband claimed that the wife desires to remain in the city only to continue her own social life and that there is no reason for him to pay for an apartment when she and the children can live in the Scarsdale house. Further, he claimed that since two of his children could attend the Scarsdale public schools, it made no sense for him to also pay for private school tuition in the city. Indeed, he stated, he could not afford to carry the Scarsdale house and pay for private school. In support of the motion the husband submitted the parties' joint income tax returns for 2006, in which they stated adjusted gross income of $722,345.

After she replaced her original counsel, the wife's new attorneys brought an additional order to show cause that sought the same pendente lite relief as the first one. In her supporting affidavit, the wife asserted that the monthly rental cost of the apartments she had seen ranged from $15,000 to $22,000.

The court granted the wife's motion to the extent of directing the husband to pay her $20,000 per month to maintain an apartment in the city pending resolution of the action, as well as $40,000 for the initial rent payment and a security deposit. The husband was further ordered to pay up to $40,000 to furnish the apartment unless the parties agreed that the wife could furnish the apartment with items from the townhouse. In addition, the court directed the husband to pay the wife interim child support in the amount of $7,000 per month, maintenance in the amount of $2,500 per month, and an interim payment of attorneys' fees in the amount of $25,000. Finally, the court ordered the husband to pay the costs of the children's private school, child care, nursery school, after-school and extracurricular activities, books, supplies, camps, travel and health care, and the family's health insurance premiums. In granting the award, the court stated that: "This temporary award is reasonable in light of the children's prior standard of living and the great discrepancy between the parents' financial positions. *See Nayar v Nayar*, 225 AD2d 370 (1st Dept. 1996). In arriving at this calculation, the court has considered that rote application of the CSSA guidelines is not mandatory on a motion for temporary support. *Rizzo v Rizzo*, 163 AD2d 15 (1st Dept 1990)."

A pendente lite award should only be modified "rarely" (*Wittich v Wittich*, 210 AD2d 138, 140 [1994]) and the general rule is that an aggrieved party's remedy for perceived inequities in a

pendente lite award is a speedy trial (see *Sumner v Sumner*, 289 AD2d 129 [2001]; *Gad v Gad*, 283 AD2d 200 [2001]). However, this rule, as the husband notes, may be set aside if exigent circumstances exist (*id.*).

While, in this case, the husband asserts that such exigent circumstances exist, he has failed to substantiate his claims. He argues that the court-mandated payments, combined with the cost of his own lifestyle, would exceed by $212,972 the gross income of $722,345 that he and the wife reported in their 2006 income tax return. However, he failed to establish his true income because he did not submit tax returns for 2007, nor did he offer any explanation for his failure. Further, it appears that in 2007 the husband had significantly more funds than he maintains he had in 2006. For example, he claimed in his net worth statement that in February 2007 he used his "separate property" to purchase a Lamborghini for over $200,000 in cash. This would have been highly unlikely, if the husband had income in 2007 equivalent to what he claimed in 2006, as it would have required that he devote more than one quarter of that income to a sports car. In any event, by purchasing the Lamborghini the husband confirmed his free-spending ways. This establishes that the award is not "so onerous as to deprive [the husband] of income and assets necessary to meet his own expenses." (*Moshy v Moshy*, 227 AD2d 182, 183 [1996].)

The husband further argues that the court impermissibly provided for a double housing allowance by ordering him to make both interim child support payments and separate payments for rental of an apartment. He asserts that at the very least the court was required to specifically delineate the components of the child support payment. The husband, however, misstates the law. In all of the cases cited by the husband in support of this point, the trial court had applied the Child Support Standards Act (Domestic Relations Law § 240 [1-b]) in fashioning the pendente lite award (*Kaplan v Kaplan*, 192 AD2d 343 [1993]; *James v James*, 169 AD2d 441 [1991]; *Lenigan v Lenigan*, 159 AD2d 108 [1990]), or was directed to do so by the Appellate Division (*Ryder v Ryder*, 267 AD2d 447 [1999]). Here, the court expressly and appropriately declined to apply the Child Support Standards Act. Thus, it was not required to deduct the amount awarded for carrying charges before determining the appropriate amount of child support (see *Otto v Otto*, 13 AD3d 503 [2004]; *Fischman v Fischman*, 209 AD2d 916, 917 [1994]).

In fashioning its award, the court properly considered the family's standard of living (*Winter v Winter*, 50 AD3d 431, 432

[2008]; *Lapkin v Lapkin*, 208 AD2d 474 [1994]; *Rizzo v Rizzo*, 163 AD2d 15, 16 [1990]). The husband cannot dispute that his children became accustomed to a lifestyle that is extremely expensive. The goal of child support is to continue the status quo pending the divorce and to satisfy the "overwhelming need to maintain a sense of continuity in the children's lives" (*Cron v Cron*, 8 AD3d 186, 187 [2004], *lv dismissed* 7 NY3d 864 [2006], *lv denied* 10 NY3d 703 [2008]). In this case, the trial court's child support award is consistent with that purpose. The same is true for those items that the husband characterizes as "open-ended" and "ambiguous," such as school supplies, summer camp and travel expenses (*see Rogers v Rogers*, 52 AD3d 354 [2008]).

The dissent loses sight of the goal of pendente lite support, which is to return the parties to the preaction status quo as quickly as possible. To require the exacting inquiry that the dissent favors would risk prolonging the process by which the parties can be returned to some sense of normalcy after the upheaval that often accompanies a separation. That this process be done speedily is especially critical where, as here, there are young children. Moreover, the dissent's approach would add an unnecessary burden to the matrimonial courts, whose resources are better spent shepherding the parties toward a final resolution.

The dissent's concern about the wife's financial responsibility is curious. This is especially so in light of the fact that the husband spent $200,000, more than one quarter of his alleged annual gross income for 2006, on a sports car. Moreover, there is no evidence that the husband objected to what he now argues are "unreasonable" expenditures during the marriage, such as the purchase of mattresses for the children that cost $6,500 each. Under such circumstances, there is no reason to impose a rebuttable presumption, as the dissent suggests, that the wife's expenditures above a specified amount are unreasonable. Of course, the wife should not interpret the order as requiring anything other than prudence and reason in making expenditures on behalf of the children. Nevertheless, the burden is on the husband to challenge the reasonableness of any expenditures that he feels are excessive.

Finally, the award should be adjusted downward to reflect the actual amount (at present, approximately $17,000) that plaintiff is paying in monthly rent. Concur—Mazzarelli, Sweeny, and DeGrasse, JJ.

Gonzalez, P.J., and McGuire, J., dissent in part in a memorandum by McGuire, J., as follows: I agree that the order should be

modified to reflect that the actual monthly cost of the apartment in which plaintiff and the three children of the marriage live is less than the monthly payments of $20,000 that defendant is required to pay under the order to maintain such an apartment. In my view, however, we should modify the award in two other respects.

First, we should vacate that portion of the pendente lite award directing defendant to make monthly payments of $7,000 in temporary child support over and above other child support payments. As defendant correctly argues, the pendente lite award separately requires him to pay for: (1) private school tuition, (2) child care and nursery school expenses, (3) after-school and extracurricular activities, (4) books and supplies, (5) camp, (6) travel expenses, (7) all medical expenses for the children and (8) the family medical insurance premiums. As the housing costs for plaintiff and the children are otherwise provided for in the pendente lite award, the only expenses left for the children, who are 3, 7 and 10 years old, are food, clothing, entertainment (even assuming, what is at least doubtful, that this category of expenses is not subsumed within the categories of after-school and extracurricular activities), allowances and gifts. Even if it is not inconceivable that $84,000 ($7,000 times 12 months) a year is reasonably necessary to pay these specific categories of expenses, it is far from obvious that such a sum is reasonable.

It may be that because Supreme Court was determining the amount of temporary child support it was not required to apply the child support guidelines and identify the factors it considered in deviating from the guidelines (compare *Fischman v Fischman*, 209 AD2d 916, 917 [3d Dept 1994], *and George v George*, 192 AD2d 693, 693 [2d Dept 1993], *with Meyer v Meyer*, 173 AD2d 1021, 1022-1023 [3d Dept 1991]). The parties cite no decision of this Court squarely on point. I need not decide the issue, however, because Supreme Court not only did not tie the award to the reasonable needs of the children, it provided no factual explanation at all of how it arrived at the $7,000 monthly sum.

As the mandated monthly payments of $7,000 in child support clearly do not include housing costs, it is not only entirely unclear but also puzzling (as is further discussed below) how Supreme Court arrived at this substantial sum for these specific categories of expenses. Although Supreme Court expressly recognized that a temporary child support award is designed to meet the reasonable needs of the children, it made no attempt to support the monthly award of $7,000 for food, clothing, entertainment, allowances and gifts with any facts bearing on the amounts the parties previously had spent for these catego-

ries of expenses. Rather, Supreme Court simply proclaimed that its entire temporary award was "reasonable in light of the children's prior standard of living and the great discrepancy between the parents' financial positions." In my view, this reasoning proves too much and, at least where, as here, such a substantial award is made for specific categories of expenses, Supreme Court erred by providing no fact-based explanation for the award. Moreover, the complete absence of any explanation of this substantial component of the temporary child support award is troublesome for an additional reason. After all, as defendant correctly notes, a speedy trial is not an adequate remedy given that public policy generally precludes a reduction in permanent child support payments on account of excessive interim child support payments (*Coull v Rottman*, 35 AD3d 198, 200 [2006], *appeal dismissed* 8 NY3d 903 [2007]).

The fundamental problem with the monthly award of $7,000 for food, clothing, entertainment, allowances and gifts is that meaningful review of this aspect of the order is not possible. In this regard, *Matter of Cassano v Cassano* (85 NY2d 649 [1995]) is instructive. There, the issue was "whether the court must articulate a reason for its award of child support on parental income exceeding $80,000 when it chooses simply to apply the statutory percentage" (*id.* at 654). Although the Court concluded that "an elaboration of needs-based reasons" was not required, it stated as follows:

"That conclusion does not, however, end our analysis. Given that the statute explicitly vests discretion in the court and that the exercise of discretion is subject to review for abuse, some record articulation of the reasons for the court's choice to apply the percentage is necessary to facilitate that review (*see,* CPLR 4213 [b]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 4213:2, at 336 [meaningful review is futile if court does not state facts upon which its decision rests]; *see also,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4213.07 [court must provide the ultimate facts which support its conclusions of law 'in order to enlighten the parties and to make more effective the review of judgments on appeal'])" (*id.* at 655).

As it cannot defend the $7,000 monthly award on the facts, the majority upholds it with a generality ("the court properly considered the family's standard of living") and by invoking a sweeping precept (the "goal of pendente lite support . . . is to return the parties to the preaction status quo as quickly as possible"). The generality could uphold an even greater monthly award (of, for example, $10,000 or $15,000) and the precept also proves too much. Meaningful review of the $7,000 monthly

award is not possible and the award for that reason is improper and unfair to defendant (*see generally Yunis v Yunis*, 94 NY2d 787 [1999]).

The majority also defends its position with the assertion that I would require "exacting inquiry." Why the majority imputes this position to me is unexplained. But even if the majority could provide a basis for characterizing the scrutiny I would require as "exacting," Supreme Court's failure to provide any factual support for its award would be no less stark. The need to avoid excessive scrutiny does not justify an inscrutable award. Contrary to the majority, requiring the articulation of at least some factual support for a pendente lite award does not "add an *unnecessary* burden to the matrimonial courts" (emphasis added). Rather, "[o]nly with such record articulation can appellate courts—especially intermediate appellate courts with plenary fact, law and discretion power—exercise meaningful, consistent and fair review of [temporary child support and maintenance] rulings" (*Yunis* at 789).

The majority thinks it relevant to note that "[e]ach child's mattress cost approximately $6,500." Unless the majority considers mattresses a recurring expense, however, it is unclear how this fact supports the $7,000 monthly award. By relying on this apparent extravagance, the majority helps to make my point: the factual basis for its decision to uphold the award of such a substantial sum over and above the other child support payments, like Supreme Court's decision to make this award, is inscrutable.

For these reasons, I would vacate the temporary child support award, direct further proceedings and require Supreme Court to articulate the factual basis for this component of the interim child support award regardless of whether it is revised after remand.

The order should be modified in another, related respect. As defendant argues, the awards for travel, after-school expenses, extracurricular activities, books, supplies and camp are open-ended (i.e., not fixed by any objective criteria). Moreover, the awards for camp, travel expenses, after-school expenses and extracurricular activities are ambiguous. For example, if, as appears to be the case, the term "travel expenses" includes vacations (and so the costs of vacations are not included in the $7,000 monthly award), defendant could be required to pay for any number of extraordinarily expensive vacations. How after-school and extracurricular activities are to be distinguished also is far from clear. I do not mean to suggest that we should decide this appeal on the assumption that plaintiff would act unreason-

ably with respect to these expenses or that the order sensibly could be read to require boundless expenditures for travel, camp, after-school and extracurricular activities. But it is worthy of note that in her net worth statement submitted by her prior counsel, plaintiff requested a monthly child support award of $50,000. I think it self-evident that this request for an annual child support award of $600,000 is preposterous.

Under these circumstances, I would direct that the modified award set a monthly limit on the amount the husband is required to pay for travel, camp, after-school and extracurricular activities with any expenditures in excess of the specified amount to be approved in advance by the court unless defendant states that he does not object to the particular expenditure. Exquisite precision cannot be achieved when it comes to defining the scope of these expenses. Given that many divorce actions are highly contentious, it is prudent to require generally that the order expressly state that all the expenses must be reasonable. Doing so can do little if any real harm but can serve to deter unreasonable expenditures borne of bitterness.

Finally, I note that whether defendant is entitled to any relief on account of the payments he made to maintain the apartment in excess of the monthly rent is not before us on this appeal.